**FOOTE et v WILLOBEE SHORE CLUB COMPANY, et**

Common Pleas Court, Lake Co

No 16784. Decided March 28, 1940

Tuttle & Hubbard, Painesville, for plaintiff.

H. U. Daniels, Painesville, for defendant. Willobee Shore Club.

E. S. Lindemann, Cleveland, for Union Properties and Russell Realty Co.

## 394

By SLOCUM, J.

This case was heard on the pleadings, the evidence and stipulations of fact, and briefs were submitted by counsel. The facts as established by the evidence and stipulations may be summarized as follows:

Prior to the 26th day of July, 1919, The Russell Realty Company acquired title to land located in Willoughby township and having a frontage on Lake Erie that was subsequently allotted and known as Willobee-on-the-Lake and referred to herein as Allotment No. 1. The plat covering this allotment was recorded on the 26th day of July, 1919, and subdivided the land into a large number of lots with necessary streets. All of the land not designated as streets was given lot numbers, excepting a parcel fronting upon Lake Erie and adjoining Lot No. 1 on the west. This last parcel is the parcel which plaintiffs claim was referred to by the use of the term "Reserve Common" in their deeds. Following the recording of this plat The Russell Realty Company sold all of the lots designated on the plat. Some of these lots were conveyed by warranty deeds and the sale of others was evidenced by land contracts. The deeds and land contracts to purchasers of lots in this allotment contained the following grant:

"Together with the right to the use of Reserve Common and all of sublot No. 1 in Block No. 1 and that part of sublots 2, 3, 4 and 5 in Block No. 1 which comprises the beach of the lake and the accretion thereto but in common with the owners of all the sublots in said allotment. Said reserve and beach to be used for pleasure, recreation, amusement, health and travel of the owners of said allotment and for no other purpose."

After the sale of all of the lots in Allotment No. 1, The Russell Realty Company acquired land immediately west of Allotment No. 1 and laid out another allotment known as Willobee-on-the-Lake Allotment No. 2. A plat of this allotment was recorded. Lots shown on this plat fronting on the lake and adjoining Allotment No. 1 and numbered A-1, A-2, A-3 and A-4 included a portion of the parcel of land that was shown on the plat of Allotment No. 1, claimed by plaintiffs to be the Reserve Common referred to in their deeds. The remainder of this claimed Reserve Common, together with Lot No. 1 in Allotment No. 1, was marked "Reserve Common". These lots which included a part of the claimed Reserve Common were sold. The description of the claimed Reserve Common set forth in the petition does not, however, include that portion of the claimed Reserve Common included in said Sublots A-1, A-2, A-3 and A-4 and sold to individual purchasers. The rights of plaintiffs, if any, in the part of the Reserve Common that was included in Sublots A-1, A-2, A-3 and A-4 in Allotment No. 2, sold to said purchasers, are not involved in this case and no determination can be made as to such rights, as the present owners of those lots are not parties defendant herein.

Subsequent to the recording of the plat of Allotment No. 2, land immediately adjoining Allotment No. 2 on the west was acquired by The Willobee Number Three Land Company. Some or perhaps all of the officers of this company were the same as the officers of The Russell Realty Company. This land was alloted and a plat of the same recorded and is known as Willobee-on-the-Lake Allotment No. 3. A parcel of land consisting of lake frontage was set aside in both Allotment No. 2 and Allotment No. 3 for use as a beach. In the deeds by The Russell Realty Company to purchasers of lots in Allotment No. 2 the following language was used:

"Together with the right as hereinafter defined, to the use of that part of the beach of Lake Erie which is embraced within the limits of Sublots A-1, A-2, A-3 and A-4 in Block No. 1 of said Willobee-on-the-Lake Allotment No. 2, and a right to the use of Reserve Common and the shelter house

and stairway and all of Sublot 1, in Block No. 1 and that part of Sublots 2. 3, 4 and 5 in Block No. 1, in Grantor's Willobee-on-the-Lake Allotment No. 1 which comprise the beach of the Lake and the accretions thereto, subject to the rights of the owners of lots in said Allotment No. 1. The right to the use of the above described lands is in common with the owners of all of the sublots in said Allotments Nos. 1 and 2 and is limited to the use thereof for the pleasure, recreation, amusement, health and travel of the owners of lots in said allotments and for no other purpose, and such use shall be subject to such reasonable rules and regulations as grantor has heretofore or may hereafter establish, and no use shall be made of any of said lands which shall effect the health of lot owners in said Allotments or be contrary to the laws or ordinances of any duly constituted public authorities. Grantor gives to the lot owners in said Allotment No. 1 a like right to the use of lands in Allotment No. 2 above described so long as the lot owners in Allotment No. 2 enjoy a reciprocal right to the use of the lands in Allotment No. 1 above described."

In the deeds by The Willobee Number Three Land Company to purchasers of lots in Allotment No. 3 substantially the same language was used as in the deeds conveying lots in Allotment No. 2. The Willobee Number Three Land Company never owned any interest in Allotment No. 1.

On the 10th day of April, 1928, The Russell Realty Company conveyed to the Willobee Shore Club Company, Trustee, Lot No. 1 in Allotment No. 1, the beach portions of Lots Nos. 2, 3, 4 and 5 in Block No. 1 of Allotment No. 1, the Reserve Common and the beach portion of Sublots A-1, A-2, A-3 and A-4 in Block No. 1 of Allotment No. 2, in trust, and on the same day The Willobee Number Three Land Company conveyed to the Willobee Shore Club Company, Trustee, the beach that had been set aside in Allotment No. 3, in trust. Following such conveyances to the Willobee Shore Club Company, Trustee. that company proceeded to act as trustee in the management of the beaches and all of the common property in all three allotments. The Willobee Shore Club Company is a corporation for profit. It also owns and operates a private club and beach located in Allotment No. 2.

The plaintiffs are the owners of lots in Allotment No. 1. The court believes that for the purposes of this opinion it is not necessary to summarize the pleadings other than to state that the prayer of the plaintiffs' petition is as follows:

"* * * plaintiffs pray this court to find and decree that plaintiffs, together with all the other owners of lots in "Willobee-on-the-Lake" Allotment (No. 1) are entitled to the exclusive use of the lands described in their deeds as "Reserve Common and all of Sublot No. 1 in Block 1 and that part of Sublots 2, 3, 4 and 5 in Block 1 which comprise the beach of the lake and the accretions thereto, but in common with the owners of all the sublots in said allotment. Said Reserve and beach to be used for pleasure, recreation, amusement, health and travel of the owners of said allotments and for no other purpose"; that whatever title said defendants or either of them have in said lands is subject to the use of these plaintiffs and all other owners of lots in "Willobee-on-the-Lake" Allotment (No. 1) for the purposes set out in their deeds from The Russell Realty Company; that said defendants and each of them hold whatever title they may have to the parcels herein described, as trustees for these plaintiffs and the other owners of lots in "Willobee-on-the-Lake" Allotment (No. 1); that said defendants and each of them are in breach of trust by which they held said parcels or portions thereof and are not proper persons to act as trustees.

"Plaintiffs further pray that said defendants may be perpetually enjoined from permitting any person other than an owner of a lot in the "Willobee-on-the-Lake" Allotment (No. 1) to use said

land for any purpose whatsoever; and that said defendants be removed as trustees.

"Plaintiffs further pray that a new trustee may be appointed to hold the legal title to said lands for the benefit of the lot owners entitled to the use thereof, and that said defendants, and each of them, may be ordered and directed to convey to the newly appointed trustee the title to the portion of said lands which they now hold as trustees, or in lieu thereof, that the decree of the court may operate as conveyance thereof, and for such further order and relief as may be equitable."

The grounds upon which they are asking for the removal of the Willobee Shore Club Company as trustees may be summarized as follows:

1. Because the Willobee Shore Club Company as trustee has permitted the use of Lot No. 1, the other enumerated lots and the Reserve Common in Allotment No. 1 by owners of lots in Allotments Nos. 2 and 3, over the protests of lot owners in Allotment No. 1.

2. Because the Willobee Shore Club Company is a private corporation for profit and has used the Reserve Common and beach in Allotment No. 1 to further its own interests in the operation of its private club and beach.

3. Because the Willobee Shore Club Company has failed to carry any separate account of money collected from lot owners or of the expenditure of such money, but has mingled it with its own private funds and has failed to keep any record or to make any account to the lot owners in Allotment No. 1.

This first ground for removal of the trustee is based upon the claim that owners of lots in Allotments Nos 2 and 3 have no right to the use of the beach and Reserve Common in Allotment No. 1. It is admitted that the trustee permitted such use. The court is of the opinion that the language contained in the deeds from The Russell Realty Company to the purchasers of lots in Allotment No. 1 admits of no other construction than a grant of an exclusive easement in or an exclusive right to use Lot No. 1, the beach portion of the other enumerated lots and the Reserve Common by the owners in Allotments Nos. 2 and 3. The language of the deeds expressly excludes the use thereof by anyone else. There seems to be a dearth of authorities upon this particular question, but as the court has indicated, he feels that the specific language of the deed is authority enough.

In view of this holding it is perhaps unnecessary to discuss the language used in the deeds to purchasers of lots in Allotments Nos. 2 and 3, for the rights of the purchasers of lots in Allotment No. 1 were already fixed before any grants were made to purchasers in Allotments Nos. 2 and 3. The recorded deeds to purchasers of lots in Allotment No. 1 and the recorded plat constituted record notice of such rights to any future purchasers. However, it appears to the court that in the deeds to purchasers of lots in Allotments Nos. 2 and 3 the language used indicated at most an attempt to grant to such purchasers the right to use the beach and Reserve Common, only so long as the owners of lots in Allotment No. 1 permitted that use to continue. This is strengthened by the fact that The Willobee Number Three Land Company never owned any interest in Allotment No. 1. It might be said that the language used in the deeds of Allotments Nos. 2 and 3 indicated a hope and desire on the part of the grantors backed by no title or legal authority, that the owners in Allotment No. 1 would let the grantees of Allotments Nos. 2 and 3 play in their sand pile and that Allotments Nos. 2 and 3 owners would let Allotment No. 1 owners play in their sand pile, so that they might all be friendly children together. This would indeed have been an ideal situation, but unfortunately it has not worked out that way.

The question has been raised as to what was included by the use of the term "Reserve Common" in the deeds to purchasers of lots in Allotment No. 1. The court is of the opinion that the

parcel of land shown on the plat of Allotment No. 1 immediately west of Lot No. 1 is the only parcel of land contained within that allotment that could answer the description of Reserve Common, and that that is the parcel referred to and intended by the use of that term. The deeds to lots in Allotment No. 1, taken with the plat of that allotment, permits no other construction. That such parcel was the parcel referred to is substantiated by the numerous witnesses who testified that that parcel was shown to prospective purchasers as being the Reserve Common.

Considering the second ground for the removal of the trustee, the court finds that the Willobee Shore Club Company owns and operates a private club and beach and that the operation of such club and beach conflicts with its duty as trustee of the beach and Reserve Common in Allotment No. 1, and that it has used its position as trustee to further its own interest in the operation of such private club and beach. This is inconsistent with the continuance of the trust relationship.

Considering the third ground for the removal of the trustee, the court finds that the trustee has mingled the funds collected from the lot owners in Allotment No. 1 and the other allotments with its own funds, and that for a period of more than ten years it has failed to make any accounting to the lot owners in Allotment No. 1.

The court finds that each of the breaches of trust herein set forth constitute grounds for the removal of the Willobee Shore Club Company as trustee, and that said company should be removed as such trustee of the land described in the petition which consists of (1) Lot No. 1 in Allotment No. 1, (2) the beach portion of Lots Nos. 2, 3, 4 and 5 in Allotment No. 1, and (3) that part of the Reserve Common not included in the portion of Lots A-1, A-2, A-3 and A-4 of Allotment No. 2, heretofore sold, but including the beach portion of said Lots, the Reserve Common to be taken as being the parcel of land shown on the plat of Allotment No. 1 lying immediately west of Lot No. 1.

Lot No. 1, Block 1, in Allotment No. 1, as shown on the plat of that allotment, was 40 feet in width. This lot was included in the plat of Allotment No. 2 but as it appears on that plat 20 feet was added to the width thereof so as to include all of Reserve Common as shown on the plat of Allotment No. 1 between Beachview Road and the beach portion of the lot, excepting the portion of Reserve Common that was included in Lots A-1, A-2, A-3 and A-4. In the deed from The Russell Realty Company to the Willobee Shore Club Company as trustee this parcel of land was described as Lot 1 in Allotment No. 1. The court finds that it was the intention of the parties to that deed to include all of Lot No. 1, Block 1, in Allotment No. 1 and all of the Reserve Common shown on the plat of Allotment No. 1, excepting that portion of the Reserve Common included in Lots A-1, A-2, A-3 and A-4, and that said deed did in fact convey to the Willobee Shore Club Company as trustee all of Lot 1, the beach portion of Lots 2, 3, 4 and 5 and all of the Reserve Common as it appears on the plat of Allotment No. 1, excepting the portion thereof included in Lots A-1, A-2, A-3 and A-4 in the plat of Allotment No. 2.

The court further finds that neither The Russell Realty Company nor The Union Properties Inc., own any interest in any part of said Reserve Common but that the full interest therein was conveyed by The Russell Realty Company to the Willobee Shore Club Company, Trustee.

The Willobee Property Owners Association has been suggested to the court by the plaintiffs as a proper and suitable trustee. This company appears to have been incorporated not for profit and for the purpose of operating the property to which the owners of lots in Allotment No. 1 are entitled to the exclusive use. It further appears that the membership of this association is made up of owners of lots in Allotment

No. 1 and that all owners of lots in said allotment are entitled to membership therein. The court is therefore of the opinion that The Willobee Property Owners Association is a proper and suitable association to act as successor trustee. The decree may, therefore, provide for the appointment of that association as trustee. The decree may further provide for the conveyance of the property herein indicated to such successor trustee, and in the event of the failure to make such conveyance that the decree of the court shall operate as a conveyance.

Prevailing counsel will therefore prepare a journal entry in accordance with this opinion, noting proper exceptions, and submit the same to opposing counsel and the court for approval.